# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Cooper Tire & Rubber Company**, <br><br> Plaintiff, <br><br> v. <br><br> **Premium Tire & Parts Corp. et al.**, <br><br> Defendants. | **Civil No**. 17-2085 (DRD) |
| **Premium Tire & Parts Company,** <br><br> Counter Claimant, <br><br> V. <br><br> **Cooper Tire & Rubber Company.** <br><br> Counter Defendant. | |

**OPINION & ORDER**

Before the Court is Plaintiff Cooper Tire & Rubber Company's ("Cooper" or "Plaintiff") *Motion to Compel Arbitration and to Stay Proceedings as to Non-Signatory Guarantors* (Docket No. 30). For the reasons set forth below, the Court **GRANTS** Plaintiff's motion and stays all claims pending the completion of arbitration.

I.          **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Cooper is a corporation duly organized under the laws of the State of Delaware that specializes in designing, manufacturing, marketing and selling car tires. (Docket No. 1 at ¶1) Defendant Premium Tire & Parts Corp. ("Premium Tire" or "Defendant") is a corporation duly organized under the laws of Puerto Rico. (Docket No. 21 at 15 ¶1) The Defendant Premium Tire was a dealer of the Cooper Tire products in Puerto Rico. (Id.) Since approximately thirty (30) years ago, the parties began a business

relationship, and eventually on August 30, 2011 executed the *Cooper Dealership Agreement* and the *Cooper Mastercraft Dealership Agreement* (collectively hereinafter referred to as the "Agreements"). (Id.; Docket No. 30, Exhibit I and II)

On August 15, 2017, Cooper filed a breach of contract and collection of money action against Premium Tire. (Docket No. 1) Essentially, the Plaintiff asserts that between November 10, 2015 and May 19, 2016, Premium Tire purchased Seven Hundred Thirty-Six Thousand Six Hundred Forty-Three and 98/100 dollars ($736,643.98) worth of goods from Cooper, which Premium Tire has not paid. (Docket No. 1 at 3, 5 ¶9, 16) Cooper also sued Tire Plaza, Inc. the Ballori Group, LLC, and Conchita Lage de Ballori, which are the guarantors of Premium Tire's prompt and punctual payment of all the goods sold by Cooper to Premium Tire. (Docket No. 1 at 7-9)

On February 7, 2018, Defendants Premium Tire, Tire Plaza, Inc. and the Ballori Group, LLC[1] filed their *Answer to Complaint and Counterclaim*. (Docket No. 21) Premium Tire's counterclaim alleges that Cooper impaired its distribution relationship, and as such claims damages based on violations of Puerto Rico's Dealer's Contracts Act ("Law 75"). (Docket No. 21) Specifically, Premium Tire asserts that Cooper had been supplying the Puerto Rico market with cheaper tires not sold to them under the dealership agreements, and also offered and supplied wholesale brand tires to other parties at a more favorable price, credit, and term than those provided to them. (Id. at 17, ¶8) Additionally, Premium Tire alleges that it was forced to accept a payment plan with Cooper that ended up "strangling" their operations. (Id.) In turn, the defendants-guarantors assert that Cooper engaged in "insidious machinations" that allegedly deceived them into

---

[1] Defendant Ms. Conchita Lage de Ballori was served with summons and a copy of the complaint through publication on May 1, 2018. (Docket No. 44) Accordingly, Defendant Ms. Conchita Lage de Ballori's answer to the complaint was due on a later term than that of the other defendants. On May 30, 2018, Defendant Ms. Conchita Lage de Ballori filed her *Answer to Complaint and Counterclaim* (Docket No. 46), which resembles the allegations contained in the same document filed by the other defendants.

executing and delivering guaranties in exchange for mutual contractual considerations that Cooper later denied, and for this reason, the guaranties at issue should be nullified. (Id. at 20, ¶15)

Over a month after Premium Tire filed its *Counterclaim*[2], the Plaintiff Cooper filed a *Motion to Compel Arbitration and to Stay Proceedings as to Non-Signatory Guarantors* (Docket No. 30). Essentially, the Plaintiff argues that this case started as a simple collection of monies action in federal court because three out of the four defendants were Guarantors that were not bound by the content of the dealership agreements executed between the parties. (Id. at 1-2). Nonetheless, after the Defendants filed their *Counterclaim*, it became pellucid that this action was no longer a mere collection action as evidenced by Premium Tire's request for damages based on Law 75. (Id. at 2) The Plaintiff requests an order from the Court to compel arbitration based on the broad arbitration clause included in the dealership agreements subscribed between the parties. (Id. at 4) More specifically, the arbitration clause contained in the agreements provide that "**[a]ll disputes between the parties will be resolved through arbitration** in Cleveland, Ohio and under the laws of the State of Ohio". (Docket No. 30, Exhibit I at 2, ¶9 & Exhibit II at 2, ¶9)(emphasis ours).

On April 13, 2018, Premium Tire duly opposed Plaintiff's motion to compel arbitration. (Docket No. 35) First, Premium Tire argues that Cooper "de facto" terminated the dealership agreement in April 2016, and consequently the parties' obligation to arbitrate vanished because of the termination. (Id. at 2-3) Additionally, Premium Tire argues that the arbitration clause contained in the dealership agreements is contrary to the public policy enunciated in Law 75 as said law contains a provision that requires all contracts be interpreted pursuant to and ruled by the laws of Puerto Rico. (Id. at 4-7)

## II. DISCUSSION

### A. The Federal Arbitration Act

---

[2] During this time, Plaintiff's original attorneys withdrew as counsel and Cooper assumed new legal representation. (Docket No. 26).

Section 2 of the Federal Arbitration Act provides, in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.

9 U.S.C.A. §2.

Congress enacted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219–220, (1985), and to place arbitration agreements "upon the same footing as other contracts," Scherck v. Alberto–Culver Co., 417 U.S. 506, 511, (1974); *See also* Allied–Bruce Terminix Companies v. Dobson, 513 U.S. 265, 270–275 (1995).

In the view of Congress, the traditional judicial hostility towards arbitration was uncalled for, given that "arbitration is simply a matter of a contract between the parties; it is a way to resolve those disputes—but only those disputes —that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, (1995). Furthermore, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than in a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 628 (1985).

The language of Section 2 of the FAA is couched in imperative binding terms. That is, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating, 465 U.S. 1, 7, (1984). Indeed, "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary..." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, (1983).

Furthermore, the Supreme Court has therefore set forth a specific presumption of arbitrability:

Finally, **it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability** in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

AT & T Technologies, Inc. v. Communications Workers of America, Inc., 475 U.S. 643, 650, (1986) (*citing* United Steelworkers of America v. Warrior & Gulf, 363 U.S. 574, 582-83 (1960))(emphasis ours).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). The Court will address each requirement in turn.

### A. Valid Arbitration Agreement

The Defendant Premium Tire argues that the arbitration clauses contained in the Agreements are unenforceable considering that "when the distributorship agreement was terminated, it brought to an end the duties of the parties to perform unperformed contractual obligations". (Docket No. 35 at 3) The Court finds that Defendant Premium Tire's argument lacks merit as the termination of a contract does not extinguish the parties' duty to arbitrate disputes arising under the contract. Litton Fin. Printing v. N.L.R.B., 501 U.S. 190, 205 (1991)(stating that "[i]f a dispute arises under the contract here in question, it is subject to arbitration even in the post contract period").

Addressing the issue of whether an arbitration clause survived an agreement, the Supreme Court in *Litton Fin. Printing v. N.L.R.B., supra,* referred to its holding in an earlier case providing that:

> We found strong reasons to conclude that **the parties did not intend their arbitration duties to terminate automatically with the contract**, and noted that the parties' failure to exclude from arbitrability contract disputes arising after termination affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual

5

relationship. **We found a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication**, but that conclusion was limited by the vital qualification that arbitration was of matters and disputes arising out of the relation governed by contract.

Litton, 501 U.S. at 204 (internal quotation marks, ellipses, and citations omitted)(emphasis ours).

The First Circuit has further imposed a two prong analysis for post-expiration arbitrability of disputes. First "we must determine if the particular dispute has its real source in the contract, and if so, we must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication." United Parcel Service v. Union De Tronquistas, 426 F.3d 470, 473 (1st Cir.2005)(quotation and citation omitted).

Here, the parties' dispute stems from the terms and conditions contained in the Agreements. For example, the Plaintiff's action for collection of moneys stems from transactions that were performed in conformity with the Agreements, while Defendant's Law No. 75 claim arises from the parties' dealership relationship established in the Agreements. Second, the arbitration clauses and the content of the Agreements generally provide no reason to believe that postexpiration arbitration was negated. All pertinent matters considered, the Court finds a valid arbitration clause existed between the parties.

### B. Moving Party Must be Entitled to Invoke the Arbitration Clause

The second requirement is that the party moving to compel arbitration be entitled to invoke the arbitration clause. This requirement is satisfied where the movant is a signatory or party to the agreement containing the arbitration provision. Torres–Rosario v. Mariott Int'l, 872 F.Supp.2d 149, 153 (D.P.R. 2012). The moving party- Cooper- is a signatory to the Agreements containing the arbitration clauses. (Docket No. 30, Exhibit I at 2, ¶9 & Exhibit II at 2, ¶9) Thus, Cooper is entitled to invoke the arbitration clause.

### C. The Other Party Must be Bound by the Clause

The third requirement is that Defendant Premium Tire must be bound by the arbitration clauses. The First Circuit has interpreted this inquiry to mean that courts must be wary of forcing arbitration in "situations in which the identity of the parties who have agreed to arbitrate is unclear." InterGen N.V. v. Grina, 344 F.3d

at 143. In the case at bar, there is no ambiguity regarding the identity of the Agreements' signatories. Premium Tire signed the Agreements and performed its obligations pursuant to Agreements for several years. Therefore, Premium Tire is bound by the arbitration clauses.

### D. Claim Must Fall Within the Scope of the Arbitration Clause

Lastly, in order for this Court to compel arbitration, the claims in this case must fall within the scope of the arbitration clause. The arbitration clause contained in the Agreements provides that "**[a]ll disputes between the parties will be resolved through arbitration** in Cleveland, Ohio and under the laws of the State of Ohio". (Docket No. 30, Exhibit I at 2, ¶9 & Exhibit II at 2, ¶9)(emphasis ours). A reading of the arbitration clause clearly shows it is broad in scope. In fact, the arbitration clause clearly states that the parties are to arbitrate "all disputes" between them, thus essentially establishing a catch-all arbitration clause for all disputes. Therefore, the Court finds the broad and all encompassing language of the arbitration clause mandates that the pending claims before this Court involving Plaintiff Cooper and Defendant Premium Tire be submitted to arbitration in accordance with the terms of the arbitration clause.

### E. Stay of Proceedings Pending Arbitration

Under the FAA, if a suit brought in any United States court upon any issue referable to arbitration under an agreement in writing, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement". 9 U.S.C.A. §3.

The Court finds the claims between Plaintiff Cooper and Defendant Premium Tire are to be submitted to arbitration, and that Plaintiff Cooper adequately requested the Court to stay the trial of the action until the arbitration ends pursuant to 9 U.S.C.A. §3. (Docket No. 30 at 8-9) Additionally, the Plaintiff's claims against Premium Tire's guarantors are not subject to the arbitration process. As such, in order to avoid inconsistent judgments, it is in the interest of justice to stay all pending claims until the Plaintiff and the Defendant finish arbitration. Additionally, the Court expects that the resolution of the claims between the parties may shed

light on the remaining nonarbitrable claims. Thus, the Court will stay the entire case pending completing of arbitration.

### F. Addressing Defendant Premium Tire's Arguments

The Defendant Premium Tire in its *Motion in Opposition to Motion to Compel Arbitration* invokes the protection Section 278b-2 of Law 75, which provides that "[t]he dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void". P.R. Laws Ann. Tit 10, §278b-2. Essentially, the Defendant argues that Section 278b-2 and the public policy enunciated in Law 75 trumps the FAA, and for this reason the Court shall not order arbitration. The Court will briefly address these arguments.

In *Southland Corp. v. Keating*, *supra,* the Supreme Court of the United States expressed that "[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration". Southland Corp. v. Keating, 465 U.S. at 10. A year later, in *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., supra,* the Supreme Court reviewed a Puerto Rican dealer's argument that Section 278b-2 of Law 75 precluded enforcement of an agreement obligating it to arbitrate controversies outside Puerto Rico. Mitsubishi Motor Corp., 473 U.S. at 617. The Supreme Court affirmed the First Circuit's ruling that the claims arising from Law 75 were arbitrable, notwithstanding the anti-arbitration provision of Law 75 and that the arbitration clause included Japan as the forum and the rules and regulations of the Japan Commercial Arbitration Association as the choice of law. Mitsubishi Motor Corp., 473 U.S. 666, n.8. Therefore, it is well established that the FAA prevails over Section 278b-2 of Law 75, which is the provision Defendant Premium Tire relies upon in the case at bar. Mitsubishi Motor Corp., 473 U.S. 666, n. 8.

Following *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.,* the Supreme Court of Puerto Rico also enforced the arbitration clause contained in a distributorship agreement and ordered the parties to arbitrate the controversy according to the terms of the arbitration clause, even though the arbitration clause

included a choice of law disposition pursuant to which the applicable law in that case was California law. World Films Inc. v. Paramount, 125 D.P.R. 352, (1990); *See also* Medika International v. Scanlan International, 830 F.Supp. 81, 84 (D.P.R.1993) ("[t]he Federal Arbitration Act preempts the Puerto Rico Dealer's Act to the extent that it negates, as against public policy, arbitration clauses which provide for arbitration of controversies outside of Puerto Rico, or under foreign law or rule of law ... While protecting dealerships may be a justifiable state concern, it does not override the federal policy supporting agreements to arbitrate."). Accordingly, the Court finds the Defendant Premium Tire's argument is meritless as the FAA prevails over contrary state laws that impede the enforceability of arbitration agreements.

### III. CONCLUSION

The Court must require that the parties honor the bargain set forth in the arbitration clauses of the Agreements and conduct arbitration in accordance with the terms of the arbitration clause. The Court will stay the case pending completion of the arbitration. As such, the Court **GRANTS** Plaintiff Cooper Tire & Rubber Company's *Motion to Compel Arbitration and to Stay Proceedings as to Non-Signatory Guarantors* (Docket No. 30).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of June, 2018.

*S/ DANIEL R. DOMÍNGUEZ*
DANIEL R. DOMÍNGUEZ
U.S. District Judge